UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LARRY HINES, et al.,

    Plaintiffs,

v.                                        Case No. 8:08-cv-2569-T-30AEP

FISERV, INC., et al.,

    Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss with Prejudice (Dkt. 33), Plaintiffs' Response in opposition (Dkt. 43), and Defendants' Reply to the Response (Dkt. 46). The Court, having considered, the motion, response, reply, and being otherwise advised in the premises, concludes that the motion should be granted in part and denied in part.

### Background

Plaintiffs Larry Hines, Robert Falcetti, Sr., Thomas A. Paaso, Raymond F. Meagher, and Lloyd Hall, (collectively, "Plaintiffs") bring this class action against Defendants First Trust Corporation, d/b/a/ Retirement Accounts, Inc. and a subsidiary of FiServ, Inc.; FiServ Trust Company, a former subsidiary of FiServ, Inc.; and FiServ, Inc., a holding company of all defendants (collectively, "Fiserv") for their alleged role in the perpetuation of a Ponzi scheme committed by Louis Pearlman. In the course of carrying out his scheme,

Pearlman allegedly marketed phony investments, including "Employee Investment Savings Accounts" and shares of stock in one or more entities owned by Pearlman ("Transcon").

Plaintiffs allege that their investments in Transcon were to be held in individual retirement accounts ("IRAs") that FiServ maintained for each Plaintiff. FiServ was a non-discretionary IRA custodian for the Plaintiffs. At each Plaintiff's direction, FiServ purchased the Transcon securities, from allegedly unregistered broker-dealers, for "deposit" into the Plaintiffs' accounts. Plaintiffs further alleged that these purchases continued over the course of many years despite numerous, detailed customer complaints alerting FiServ to problems with the Transcon investments.

Plaintiffs ultimately lost their investment funds to Pearlman's fraud. Plaintiffs filed this action against FiServ alleging breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, aiding and abetting fraud, negligence, breach of contract, a violation of the Florida Securities and Investor Protection Act ("FSIPA"), and aiding and abetting a violation of the FSIPA.

**Motion to Dismiss Standard**

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Blackston v. State of Alabama, 30 F.3d 117, 120 (11th Cir. 1994) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in

the light most favorable to the plaintiff. See Hunnings v. Texaco, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994). To survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1960 (2007). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. See Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Court. at 1959.

## Discussion[1]

At the heart of the relationship between the parties is a set of contract documents signed by each Plaintiff in connection with the opening of the IRA accounts. These documents include an Application, a Financial (Designated) Representative Authorization, two Investment Authorizations, a Traditional IRA Plan and Trust Agreement, a Traditional IRA Disclosure Statement, and other documents (collectively, "the IRA contract").[2]

---

[1] The Amended Complaint is a typical shotgun complaint in which Plaintiffs incorporate all prior paragraphs of the complaint in each Count. Though all counts seem to be based on essentially the same general set of circumstances, it is very difficult to determine which facts relate to which counts. In the interest of efficiency, the Court will rule on the Motion as it is written. However, to the extent that amendment of the complaint will be permitted, the Plaintiffs are warned that another shotgun pleading will not suffice.

[2] Plaintiffs did not attach the IRA contract to the Complaint, but FiServ attached the documents to its Motion to Dismiss. Because these documents are central to the plaintiffs' claims, the Court may consider the IRA contract as part of the pleadings for the purposes of Rule 12(b)(6). Underwriters at Interest Subscribing to Certificate v. Seaboard Marine, LTD., 2009 U.S. Dist. LEXIS 28486 at *2-3, n. 1 (S.D. Fla. Apr. 3, 2009)

As an initial matter, FiServ argues that Colorado law should apply to all of Plaintiffs' claims due to the choice of law provision in the IRA contract. The IRA contract provides, "this Plan shall be governed by and construed, administered, and enforced according to the laws of [Colorado] except to the extent preempted by Federal law." The Court agrees that Colorado law applies to all counts relating to the IRA contract. As to the Plaintiffs' independent tort claims, Florida law applies. The choice of law provision in the IRA contract is clear that it extends only to the interpretation of the contract and administration of the Plan. Claims for actions outside the contract may be brought under Florida law. In most circumstances, it does not matter whether Florida or Colorado law apply because the law of each state is essentially the same with respect to common law tort claims.

## I. Breach of Fiduciary Duty

Plaintiffs allege that FiServ owed a fiduciary duty as the custodian or trustee of the Class Members's self-directed IRAs under Internal Revenue Code §408, as incorporated into the IRA contract. FiServ allegedly breached that duty by substantially assisting the Pearlman fraud. FiServ argues that the Plaintiffs have not and cannot properly allege that a fiduciary relationship existed.

To state a claim for a breach of fiduciary duty, Plaintiffs must allege that a fiduciary duty existed, that FiServ breached that duty, and that the breach was the proximate cause of damages. <u>Aller v. Law Office of Carole C. Schriefer</u>, 140 P.3d 23, 26 (Colo. Court. App. 2005) (citations omitted). The duties of a non-discretionary IRA custodian are limited by the

language of the IRA contract. Metz v. Independent Trust Corp., 994 F.2d 395, 398 (7th Cir. Ill. 1993) (citing Dunker v. Reichman, 841 F.2d 177, 180 (7th Cir. 1988)).

The IRA contract expressly disclaims any fiduciary duty on the part of FiServ to investors. Section 7.3 of the IRA Contract states: "The trustee acts in a non-discretionary trustee capacity and has no fiduciary capacity or authority with respect to *any matter* involving the Plan or Plan assets." Dkt. 34, Ex. 2 at 19 (emphasis added).

Despite this unambiguous language in the IRA contract, Plaintiffs argue that IRC §408 imposes fiduciary duties upon FiServ. Though Plaintiffs admit that there is no private right of action under IRC §408, they contend that FiServ is subject to the terms of §408 and corresponding regulations because they were incorporated into the IRA contract. In making that argument, Plaintiffs rely on section 5.2(a) of the IRA contract, which states in pertinent part: "the distribution of a Participant's Account shall be made in accordance with the minimum distribution requirements of Code Section 408(a)(6) and the applicable regulations thereunder." Dkt. 34, Ex. 2, p. 16. Plaintiffs also call attention to section 10.3 of the IRA contract, which provides that any provision of the IRA contract is invalid to the extent that it conflicts with IRC §408.

IRC §408(h) recognizes that custodial IRAs, such as the Plaintiffs' accounts here, are not trusts. They are only treated as trusts for tax deferral purposes. Courts applying this section of the code in relation to custodial IRA accounts have held that IRC §408 and the corresponding regulations do not create any fiduciary or other duties of care. See Cowburn

v. Leventis, 619 S.E.2d 437, 451 (S.C. Court. App. 2005); Matkin v. Fid. Nat'l Bank, 2002 U.S. Dist. LEXIS 27571 at *9 (D.S.C. July 11, 2002).

Plaintiffs mistakenly rely on Masi v. Ford City Bank & Trust Co., 779 F.2d 397 (7th Cir. Ill. 1985), to support their argument that IRAs are "special deposits that constitute a trust relationship wherein the [trustee] owes a fiduciary duty to the depositor." Id. at 401. The IRA in Masi was a typical, discretionary IRA account. Trustees of discretionary accounts may be subject to other obligations that give rise to fiduciary duties.

The IRA contract here is unambiguous and does not contradict itself. IRC §408 imposes no duties on IRA custodians and the IRA contract expressly provides that FiServ owes no fiduciary duties to the plaintiffs. Plaintiffs cannot maintain a claim for a breach of fiduciary duty where no duty exists. Therefore, Count I is dismissed with prejudice.

## II.     Aiding and Abetting Breach of Fiduciary Duty

Plaintiffs second count is based on Pearlman's alleged breach of fiduciary duty. Plaintiffs claim that Pearlman owed a fiduciary duty because he and his co-conspirators rendered investment advice by recommending the Transcon investments to the plaintiffs. Pearlman allegedly breached that duty by running the Ponzi scheme, with which FiServ allegedly assisted.

Plaintiffs' allegation regarding Pearlman's fiduciary duty is not pled with sufficient facts to support the claim. Providing investment advice alone does not automatically create a fiduciary relationship. See Paine, Webber, Jackson & Curtis, Inc. v. Adams, 718 P.2d 508, 517-518 (Colo. 1986). Whether a fiduciary relationship exists depends on the specific

relationship between the advisor and the customer. Id. Plaintiffs' conclusory allegation that Pearlman recommended that the plaintiffs invest in the companies that he owned, without more information, is not enough to claim that Pearlman owed a fiduciary relationship. For this reason, the claim for aiding and abetting a breach of fiduciary duty is dismissed without prejudice.

Even if a fiduciary relationship with Pearlman existed, the allegations of substantial assistance are not well pled. Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 295 (2d Cir. N.Y. 2006). All of Plaintiffs' allegations of FiServ's substantial assistance are based on FiServ's failure to act. For example, the Amended Complaint alleges that FiServ substantially assisted by:

> Failing to review any Transcon investment materials, by failing to administer and enforce the terms of the Transcon investments, and by failing to follow its own internal procedures regarding the determination as to whether the Transcon investments were eligible to be placed in IRA custodial accounts.

Dkt. 7 at ¶75. However, a failure to act, absent a duty to act, is not substantial assistance. Lerner, at 295. The Amended Complaint does not allege that FiServ had any duty to take these actions. For these reasons, Count II is dismissed without prejudice.

### III. Aiding and Abetting Fraud

Plaintiffs claim for aiding and abetting fraud is based on the same actions as the claim for aiding and abetting a breach of fiduciary duty. Plaintiffs allege that FiServ knowingly and substantially assisted Pearlman perpetrate the Ponzi scheme. Under Florida law, liability

for aiding or abetting fraud requires a showing that an underlying fraud existed, the defendant had knowledge of the fraud, and the Defendant substantially assisted the commission of the fraud. ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co., 917 So. 2d 368, 372 (Fla. Dist. Court. App. 5th Dist. 2005).

FiServ argues that Plaintiffs fail to properly plead the knowledge and substantial assistance elements of this claim. FiServ must have had actual knowledge for Plaintiffs to prevail on an aiding and abetting claim. See Id. at 372. Plaintiffs appear to have met this requirement alleging that "FiServ had knowledge of the Pearlman fraud..." Dkt. 7 at ¶107.

But in the factual portion of the amended complaint, Plaintiffs appear to say that FiServ should have known of the Pearlman fraud because of numerous customer complaints and the many problems that customers had obtaining dividends and attempting to liquidate their investments. The Court will allow an amendment to this count. Plaintiffs are directed to specifically state whether it is claiming that FiServ had actual knowledge. If Plaintiffs make that claim without adequate investigation, of course, they are subject to Rule 11 sanctions.

Plaintiffs' allegations of FiServ's substantial assistance of the fraud are the same allegations that are used to support substantial assistance of Pearlman's breach of fiduciary duty in Count II, i.e. FiServ's failure to act. As discussed above, a failure to act, where there is no duty to act, is not substantial assistance. Count III is insufficiently pled and, therefore, is dismissed without prejudice.

## IV. Negligence

Plaintiffs claim that FiServ breached a duty of care by violating certain FDIC imposed "regulations" and "obligations." The "regulations" to which Plaintiffs refer are not actually regulations but, rather, are a portion of the FDIC's Trust Examination Manual ("the Manual"). According to the FDIC's website,

> The FDIC protects bank depositors by periodically examining the trust operations of FDIC-regulated financial institutions. These examinations determine if an institution's policies or the way it administers accounts has resulted in a contingent liability or estimated loss that could damage the institution's capital...
>
> The FDIC's Trust Examination Manual is designed to assist regulators in planning and conducting regulatory examinations of trust departments. The manual serves as a comprehensive reference on trust concepts, principles, common and statutory law – both State and Federal – and regulations along with the applicable regulations that together govern the behavior of fiduciaries.
>
> The Trust Examination Manual explains trust concepts and regulatory policies, as well as contains detailed text of applicable statutes, regulations, and interpretations.

Trust Examination Overview, http://www.fdic.gov/regulations/trust/index.htm (last visited March 17, 2010). The Amended Complaint cites Section Two of the Manual to provide the supposed duties of care that FiServ owed to the plaintiffs. Even if the Manual created duties of care, Section Three – Part I of the Manual expressly provides that the custodians of self-directed accounts, such as the accounts at issue here, have no responsibilities beyond the provisions of the governing account instrument. Dkt. 34, Ex. 6 at 2.

The "obligations" mentioned in the Amended Complaint are taken from the Interagency Statement of Policy on Retail Sales of Nondeposit Investment Products ("the Policy Statement"). Plaintiffs do not allege how the Policy Statement applies to FiServ. FiServ neither sells nor recommends nondeposit investment products, such as annuities and mutual funds, to their IRA customers and Plaintiffs do not allege otherwise.

Plaintiffs have failed to allege that FiServ owed them any duty of care. The claim for negligence is deficient and is dismissed without prejudice.

## V.     Breach of Contract

Plaintiffs identify four contractual duties that FiServ allegedly breached: (1) to timely and accurately report customers' holdings and the accurate value thereof to both customers and the IRS; (2) to ensure that only qualified investments meeting IRS and IRC standards be placed into class members' FiServ IRA accounts; (3) to enforce the rights and remedies available to holders of Transcon investments; and (4) not to commingle funds from multiple accounts held by customers. Upon a thorough review, it appears these contractual duties do not appear in the IRA contract. Vague allegations of some unidentifiable duties are not sufficient to state a claim for breach of contract.

And at least one of these alleged duties is specifically contradicted by the terms of the IRA contract. The valuation reporting policy of the IRA contract states that FiServ reports the values of illiquid investments, such as the Transcon investments, either at the original offering price or the values provided to FiServ by a general partner, officer, or sponsor of the investment. Dkt. 34, Ex. 2 at 3. The policy goes on to state that FiServ "does not conduct

appraisals of investments and does not seek to verify the prices or values provided to it." Id. at 4. Plaintiffs fail to point to any term in the contract which even arguably creates an obligation that FiServ would report the "accurate" value of customers' holdings.

The alleged duty not to commingle funds from multiple accounts held by customers is apparently based on section 7.6 of the IRA contract, which states: "The trustee, as trustee of the assets entrusted to it under the plan, shall not commingle the Trust with any other property it holds except in a common trust fund or common investment fund." Plaintiffs appear to misconstrue which funds may or may not be commingled. The IRA contract unambiguously states that the trust, as a whole, shall not be commingled with any other property. Plaintiffs fail to allege that any of their trusts were commingled.

It is unclear to what terms in the IRA contract support alleged breaches two and three. As FiServ correctly argues, Plaintiffs' claim for breach of contract is not well-pled. Therefore, Count V is dismissed without prejudice.

## VI. Florida Securities and Investor Protection Act

FiServ argues that Colorado law should apply to all claims brought in this action based on the choice of law provision in the IRA contract. If Colorado law applies, a Florida statute is inapplicable. But the IRA contract states that Colorado law applies to the construction, enforcement, and administration of the Plan. A claim for the violation of the FSIPA does not call for the interpretation of the IRA contract. The choice of law provision does not extend to claims that arise independent of the IRA contract.

However, Plaintiffs have not adequately pled these counts. The FSIPA provides:

> Any person purchasing or selling a security in violation of s. 517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission, if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.

Fla. Stat. §517.211. FiServ's alleged violation of the statute is based on the conclusory allegation that FiServ was acting as Pearlman's agent. There are no factual allegations in the Amended Complaint that support the claim of an agency relationship between Pearlman and FiServ.[3] Plaintiffs claim only that FiServ acted as Pearlman's agent "by providing access to IRA custodial services to victims of the Pearlman fraud." Dkt. 7 at ¶128. That fact alone does not create an agency relationship between Pearlman and FiServ.

A claim under the FSIPA also requires that the violator have personally participated in making the sale or purchase. Plaintiffs' allegations as to that element are similarly conclusory. The requirement that a "defendant 'personally participate or aid in making the sale' necessarily 'implies some activity in inducing the purchaser to invest.'" Dillon v. Axxsys Int'l, Inc., 385 F. Supp. 2d 1307, 1311 (M.D. Fla. 2005) (quoting Nichols v. Yandre, 9 So.2d 157, 160 (Fla. 1942)). There are no allegations in the Amended Complaint that

---

[3] The Investment Authorization form, which directed FiServ to invest the Plaintiffs' IRA funds in a Transcon investment, states, "[FiServ] …does not sponsor nor is an agent of any investment I have selected…" Ex. 1 at p. 4. The Plaintiffs signed that form acknowledging that FiServ was not an agent of Pearlman or the Transcon investments. Despite this disclaimer, however, the facts, if properly alleged, may still support an agency relationship.

support the claim that FiServ had any part in inducing the purchase of the Transcon investments. Plaintiffs allege that Pearlman chose FiServ and required Plaintiffs to open FiServ accounts in order to invest in the Transcon investments. There is no allegation that FiServ had any contact with Pearlman or anyone involved with Pearlman beyond the purchase of the investments made at the direction of the plaintiffs.

Finally, there can be no separate claim for aiding and abetting a violation of the FSIPA. "Liability based on such a theory is limited to directors, officers, partners or agents of the purchaser or seller and those directors, officers, partners or agents must have personally participated in the sale," which is covered by the statute. Carran v. Morgan, 2007 U.S. Dist. LEXIS 84322 (S.D. Fla. Nov. 13, 2007). For these reasons, Count VI is dismissed without prejudice and Count VII is dismissed with prejudice.

**VII. Economic Loss Rule**

FiServ argues that Counts I-IV are barred by the economic loss rule. Pursuant to Florida law, the economic loss rule provides that "parties to a contract can only seek tort damages if conduct occurs that establishes a tort distinguishable from or independent of [the] breach of contract." Jones v. Childers, 18 F.3d 899, 904 (11th Cir. 1994).

The Court need not decide if Count I is barred by the economic loss rule because that count has already been dismissed with prejudice. Counts II and III, aiding and abetting breach of fiduciary duty and fraud, are not barred by the rule because these claims require that the Plaintiffs allege different elements than the breach of contract claim. The Court is

unable to determine at this point if Plaintiffs' negligence claim, Count IV, is barred by the economic loss rule.

## VIII. Colorado Statute

FiServ also argues that all of the Plaintiffs' claims are barred by Colorado Revised Statute §15-1-307. As discussed above, Colorado law only applies to the claims regarding the IRA contract. None of Plaintiffs' tort claims are barred by this Colorado statute. Additionally, the statute applies only to entities acting in a fiduciary capacity. As the Court has already determined as a matter of law that FiServ owed no fiduciary duties to Plaintiffs, this statute does not apply to any of Plaintiffs' claims.

It is therefore ORDERED AND ADJUDGED that:

1. Defendants' Motion to Dismiss (Dkt. 33) is **GRANTED in part** as set forth above.

2. Plaintiffs may file a second amended complaint as to any counts dismissed without prejudice within **twenty (20) days** of the date of this Order.

**DONE** and **ORDERED** in Tampa, Florida on March 25, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2008\08-cv-2569.mtd 33.frm